OPINION OF THE COURT
Meyer, J.
A tenant whose cancellation of his lease is governed by section 40 of the Code of the Rent Stabilization Association of New York City, Inc. (Code), and who prior to cancellation litigates the propriety of the hardship increase approved by the Conciliation and Appeals Board (CAB) is permitted to continue in occupancy at no increase in rent from the date on which he receives a copy of the CAB order on which he based his right to cancel until the expiration of the 60-day notice of cancellation required by the section, but is required to pay the increase for the period from its effective date as fixed by section 40 until the date on which he received the CAB order which triggers his cancellation notice. The order of the Appellate Division should, therefore, be modified by reinstating so much of the CAB order of June 28, 1979[1] as excused a canceling tenant from payment of the increase for the period specified above and should be otherwise affirmed, without costs.
The appeal requires interpretation of section 40 of the Rent Stabilization Code adopted pursuant to section YY516.0 of the Administrative Code of the City of New York. That section provides: “An application for the adjustment of a stabilization rent may be filed on any grounds specified herein. In the event no order is issued within thirty (30) days from the date of filing an application before CAB, the order adjusting the stabilization rent shall be effective as of such thirtieth day. In the event that an order is issued increasing the stabilization rent because of owner hardship, the tenant may, within thirty (30) days of his receipt of a copy of the order of the CAB, cancel his lease on sixty (60) days’ written notice to the owner. During said period the cancelling tenant may continue in occupancy at no increase in rent.”
*21 Windsor Park Apartments is a 20-building complex consisting of 1,828 units. On March 27, 1975, the owner (Windsor Park Associates) filed with the CAB its application for a hardship increase of 20.77%. On October 15, 1976, the CAB issued its order approving an increase of 6% effective, as required by section 40, on April 27,1975, and a further increase of .31% effective April 27,1976. To review that determination, the tenants’ association instituted an article 78 proceeding in Queens County (hereinafter “the first Article 78 proceeding”). Enforcement of the CAB order was stayed pending decision in that proceeding. The decision ultimately rendered granted the petition and remanded to the CAB for further processing, including audit of the owner’s books by the tenants. On appeal by the landlord and the CAB to the Appellate Division, Second Department, that court stayed the Special Term order to the extent of authorizing the landlord to collect the increased rent, beginning with the January, 1977 payment, the increase, however, to be held in escrow pending determination of the appeal.
The Second Department affirmed and continued the escrow arrangement for future rents pending final determination of the issues in the proceeding (59 AD2d 121,138, n 3). On remand, the CAB on January 19, 1979 allowed a 6% increase effective April 27, 1975 but reduced that part of the increase effective April 27, 1976 to .21%. The order directed that the money held in escrow be applied to the retroactive rent payable by each tenant, any balance to be paid in 12 equal monthly installments, but should a tenant vacate after issuance of the order the balance of his or her arrears to become payable immédiately. It also noted, however, the right of tenants under section 40 to cancel within 30 days of the order, and stated that “Such tenant may remain in occupancy at no increase in rent until his vacature [sic].” The tenants then requested the CAB to reconsider that order and resolve the question whether a tenant who cancels after the hardship increase is responsible for the increase retroactively to its effective date. On June 28,1979, the CAB issued an opinion dated March 29, 1979, superseding the earlier order. In the opinion the CAB majority construed the words “[d]uring said period” *22 in the last sentence of section 40 to excuse a tenant who canceled after receipt of a copy of the CAB order issued at the culmination of the first Article 78 proceeding from paying the increase “both prospectively and retroactively,” but also to excuse any tenant who had previously canceled his or her lease in reliance upon the CAB’s original order because to hold otherwise “would penalize the tenants for pursuing their rights to judicial review.” The CAB dissenters concluded that section 40 excused a canceling tenant only for the 60 days after his or her election to cancel.
The landlord then commenced the instant article 78 proceeding in Supreme Court, New York County, to review the CAB retroactivity determination. Special Term dismissed the petition, reasoning that section 40 was ambiguous and the construction of the CAB majority not irrational and that, therefore, he should defer to the agency’s construction. The Appellate Division, First Department, unanimously reversed, on the law and the facts, and granted the petition to annul the CAB determination. It held that determination arbitrary and capricious and wholly inconsistent with the language and intent of section 40, which, it held, gave the tenants the right to cancel as to future occupancy only and was never intended to permit a tenant by canceling to avoid paying the increase for the period of occupancy prior to cancellation.
On appeal to us the CAB argues that the result reached by the Appellate Division is not compelled by the language of section 40, that the Stabilization Code makes no provision for escrow deposits and that tenants should not be held retroactively liable for the increase because until conclusion of the first Article 78 proceeding they did not have the information necessary to decide whether to cancel. We conclude that the absence of provision in the Code section for escrow deposit is irrelevant in light of the Appellate Division’s authority under CPLR 5519 (subd [c]) to impose an escrow condition. We agree, though on somewhat different reasoning, with the Appellate Division’s conclusion that section 40 of the Code cannot be construed to relieve the tenant of the obligation to pay the approved increase for the period from its effective date to the date on which a canceling tenant receives a copy of the order which triggers *23 his right to cancel, but conclude that the cancellation notice, if given within 30 days of the tenant’s receipt of a copy of the order, relieves the tenant of the obligation of paying the increase for the period from such receipt to the expiration of 60 days from the notice of cancellation. We, therefore, modify the Appellate Division’s order as indicated below.
The second sentence of section 40 makes any order adjusting stabilization rent effective on the thirtieth day after the filing of an application for adjustment, unless the order is issued within 30 days from filing. It makes no distinction between adjustments which increase and those which decrease,[2] and does not differentiate between tenants who ultimately decide to cancel and those who do not. It is concerned only with effective date and not at all with tenants who later decide to cancel.
Cancellation is dealt with by the third and fourth sentences. The right to cancel is triggered by the tenant’s receipt of a copy of a CAB order authorizing an increase and is effectuated by the giving within 30 days thereafter of 60 days’ written notice. The giving of such notice permits the canceling tenant to “continue in occupancy at no increase in rent,” the measure of the excusal from payment of the increase being “[djuring said period.”
The CAB’s reading of the words “[djuring said period” is irrational for a number of reasons. First and most important, it renders the second sentence meaningless as to a tenant who cancels. The reason for making the adjustment order effective 30 days after application can only be so as not to penalize the applicant (owner or tenant) by continuing the prior rent (whether too low, as when an owner presents a hardship case, or too high, as when a tenant presents a case of rental in excess of market or failure to maintain services) for the often lengthy period required for CAB review. By reading “said period” to bridge not only from cancellation to the end of the 60 days’ notice but also the entire time back to the effective date mandated by the section, that mandate is ignored as to any tenant who *24 ultimately cancels. In effect, the second sentence is construed as though it read “shall be effective as of such thirtieth day as to tenants who do not elect to cancel.” Something more than the CAB’s ipse dixit is necessary if the section is to be so interpreted (cf. Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).
Second, to read “said period” (emphasis supplied) as did the CAB ignores the facts that the section speaks of two separate periods (30 days from filing in the second sentence; the period for giving of cancellation notice plus 60 days in the third sentence) and that only the latter period is related to cancellation. In effect, by bridging the time between the two periods it creates yet a third period, which cannot have been contemplated as within the words “said period,” referring as those words do to only one period.
Third, it ignores the relations between the third and fourth sentences, both of which deal with cancellation following an increase. Because that is so, the natural reading of “said period” in the fourth sentence dealing with the effect of cancellation is that it refers to the period described in the third sentence. Indeed, were the intent what the CAB has declared it to be, the words “[djuring said period” in the fourth sentence would be wholly superfluous.
Nor does the rationale of the CAB majority withstand analysis. The fact that a tenant cannot tell until after litigation has ended whether the increase approved by the CAB is what he will be required to pay is irrelevant. He knows from both the order and the section that the effective date of the increase is 30 days after the application was filed and that he has the right to cancel within 30 days of receipt of the original order. If he decides not to cancel but to litigate, he knows that his occupancy is at the increased rental and takes his chances on whether he will be successful in having it reduced. The Code by giving him the right to cancel protects him against having to pay a rental which he finds unacceptable; it does not protect him against having to make a choice between cancellation and litigation or against payment of the increased rental in consequence of unsuccessful litigation. It is the landlord, in case of an increase order, whom the Code protects from *25 being penalized by the tenant’s right to judicial review, not the tenant.
That is not to say that by undertaking to test such an order a tenant forfeits his cancellation privilege, however. The stays granted by Special Term and the Appellate Division were sufficient to extend the privilege, as to any tenant who did not cancel following receipt of the original order, until receipt of any later order resulting from the litigation, provided only that proper cancellation notice was given within 30 days of receipt.
In one aspect, however, the Appellate Division appears to have misconstrued the section. Its opinion states “It is the future occupancy which the tenant has a right to cancel” (91 AD2d, at p 570 [emphasis in original]) and its order annuls the CAB determination in toto. The effect of its ruling, therefore, is to accord a canceling tenant relief from payment of the increase only during the 60-day notice period. However, the words “[d]uring said period” follow a sentence referring to a period consisting of the time from the tenant’s receipt of the order to his giving of cancellation notice plus the required 60 days’ notice. A canceling tenant is, therefore, relieved of paying the increase not only as to the time after notice is given but also as to the time prior to notice which the Code allows him for decision whether to cancel.
For the foregoing reasons, the order of the Appellate Division should be modified and the matter remitted to the CAB for determination of amounts due the petitioner in accordance with this opinion and, as so modified, should be affirmed, without costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Simons concur.
On review of submissions pursuant to rule 500.2 (b) of the Rules of the Court of Appeals (22 NYCRR 500.2 [g]), order modified and matter remitted to Supreme Court, New York County, with directions to remand to the board for further proceedings in accordance with the opinion herein and, as so modified, affirmed, without costs.

. The Appellate Division decision erroneously refers to it as a June 29,1979 order.

. Either a tenant or the owner may apply for a rent adjustment (Administrative Code of City of NY, §§ YY51-6.0.2, YY51-6.0.3).